# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 1:09-CV-3371-JEC |
| | : | |
| $5,282,495.03 SEIZED FROM | : | |
| FIDELITY BANK ACCOUNT | : | |
| X-0691; and $1,100,957.44 SEIZED | : | |
| FROM FIDELITY BANK | : | |
| ACCOUNT X-078 | : | |
| | : | |
| Defendants. | : | |

**JOINT MOTION TO DISMISS AND INCORPORATED
MEMORANDUM OF LAW FILED BY CLAIMANTS
MANSEF INC. AND PREMIUM SERVICES LLC**

COME NOW, the Claimants, Mansef Inc. ("Mansef") and Premium Services, LLC ("Premium"), by and through their undersigned counsel, and hereby move to dismiss the complaint for forfeiture in this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule G(5)(b) of the Supplemental Rules of Certain Admiralty and Maritime Claims. Pursuant to Local Rule 7.1, a memorandum of law in support of this motion is incorporated herein. In support, undersigned counsel state as follows:

1

## I.   INTRODUCTION

This is an action involving the Government's seizure of bank accounts and forfeiture complaint based on the sole unsupported allegation that Claimant Premium is an unlicensed money transmitting business. The Government bases its allegation exclusively on the factual pleadings, assumed true for purposes of this Motion, that Premium has bank accounts into which it has received deposits and from which it has made disbursements. This is wholly insufficient under the law to turn Premium into a money transmitting business, licensed or otherwise. Hence, the Government's efforts fail on the merits and all the seized funds should be forthwith returned to Premium.

The two claimants are Mansef and Premium. It is their position, individually and collectively, that Premium is not a money transmitting business as defined in federal or Georgia state law and so it is not required to be licensed or registered as such. Stated simply, the basis for this Motion to Dismiss is that the Government has failed to adequately plead the facts necessary to plausibly conclude that Premium is a money transmitting business, much less that it was required to be licensed or registered as such.

### A. The Claimants

Mansef and Premium have a parent/subsidiary relationship. Mansef, the parent, is a Canadian company which provides legal online adult entertainment for its customers worldwide. There are no allegations, in this or any other forum, that the adult entertainment provided by Mansef is anything other than lawful and legitimate. Mansef is a substantial company which employs several hundred people, including content creators and supervisors, computer engineers and programmers, information technology specialists, search engine optimization technicians, human resources personnel, accounting and financial staff as well as in-house lawyers. Likewise, the legality of the content is regularly reviewed by Mansef's content creators and supervisors and also regularly audited by the third party payment processors which require certain content standards be met in order to pay Mansef the proceeds received by the payment processors from the customers of Mansef's products.

Premium, a Delaware corporation, was established in 2009 by Mansef to serve as Mansef's (and only Mansef's) fiscal agent. Premium had no other "clients." In its short existence, Premium opened two (2) bank accounts on behalf of Mansef. All of the money that ever entered or left the two bank accounts did so at the behest of Mansef. Likewise, all of the money that ever entered or left the

two bank accounts was the property of Mansef. Mansef caused Premium to establish these accounts for the straightforward, legitimate business purpose of facilitating payments from Mansef's third party credit card processors into the accounts and to allow Mansef to remit funds out of the accounts to Mansef's U.S. vendors.

For purposes of this Motion to Dismiss, these facts are not germane and the Court need not decide them at this time. Rather, they are provided for context only. Instead, the question at issue in this Motion to Dismiss is whether the Plaintiff has stated a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6).

  **B. The Complaint**

Plaintiff's complaint for forfeiture is composed of thirty six (36) paragraphs. Of those thirty six (36) paragraphs, twelve (12) merely recite (or purport to recite) Georgia or federal law; these are paragraphs 1, 2, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14. Next, two (2) paragraphs allege that the venue and jurisdictional requirements of this court have been met; these are paragraphs 4 and 29, respectively. Also, two (2) paragraphs describe how Special Agent Anne Rothenburg, the signatory on the complaint, conducted her investigation and sought the seizure warrant; these are paragraphs 3 and 15.

Of the remaining twenty (20) paragraphs, four (4) describe Premium's corporate status in the State of Delaware; these are paragraphs 16, 17, 18 and 23. Additionally, four (4) paragraphs purportedly describe the account opening process for the two bank accounts at issue in this case; these are paragraphs 19, 20, 21 and 22.

Of the twelve (12) remaining paragraphs, six (6) describe the account activity of the two bank accounts at issue in this case between August 7, 2009 until October 2, 2009; these are paragraphs 24, 25, 26, 27, 28 and 30. These paragraphs allege, generally, that Premium received money into and sent money out of these bank accounts, and that this money was always in the form of a wire. Then, four (4) paragraphs allege that Premium was neither licensed by nor registered with the State of Georgia nor registered with the federal government to operate as a money transmitting business; these are paragraphs 31, 32, 33 and 34. The final two (2) paragraphs of the complaint – 35 and 36 – allege that Premium was an unlicensed money transmitting business and that consequently all its seized funds should be forfeited to the federal government.

Thus, to summarize, the Government bases its entire complaint on the unsupported leap that Premium, because it has bank accounts into which it

received deposits and from which it made disbursements, is an unlicensed money transmitting business.

## II.     MEMORANDUM OF LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint shall be dismissed for failing to state a claim upon which relief can be granted. Under Rule 12(b)(6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because it fails to allege sufficient facts to support an otherwise cognizable legal claim.  In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *quoting, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Supp.R.G(2)(f).  A claim is facially plausible "when the plaintiff pleads **factual content** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id., citing Twombly*, 550 U.S. at 556; (emphasis added).

At the same time, a claim may not survive a Rule 12(b)(6) attack simply by making conclusory statements or alleging the bare elements of a cause of action:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

>conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 555; *quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). Rather, "a plaintiff must provide enough factual allegations, which are assumed to be true, 'to raise a right to relief above the speculative level.'" *Wilchombe*, 555 F.3d at 959; *quoting*, *Twombly,* 550 U.S. at 555. Of course, while the Court must accept as true all of the factual allegations contained in a complaint, it need not accept as true the legal conclusions: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950.

In this case, the question thus becomes whether the government "has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible the fact that" Premium was a money transmitting business required to become registered federally and registered or licensed by the State of Georgia. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007). That question should be answered in the negative. Indeed, the Government's complaint should be dismissed because it merely states legal conclusions and does not contain any factual allegations which would allow the Court to conclude that Premium was a

7

money transmitting business which was required to become registered with or licensed by the State of Georgia and registered with the federal government.

Specifically, under federal law, a money transmitting business is defined as having three essential elements:

> Money transmitting business. The term "money transmitting business" means any business other than the United States Postal Service which—
>
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
>
> (B) is required to file reports under section 5313 [31 U.S.C. § 5313]; and
>
> (C) is not a depository institution (as defined in section 5313(g) [31 U.S.C. § 5313(g)]).

31 U.S.C. § 5330(d)(1). As stated by the Court in *United States v. Mazza-Alaluf*, 607 F.Supp. 2d 484, 494 (S.D.N.Y. 2009):

> It is critical…that section 5330(d)(1)(B) uses the conjunctive word 'and.' *All three* subparagraphs of section 5330(d)(1) must be satisfied in order to fall within the registration requirements of a 'money

8

>     transmitting business,' including the obligation to file
>     reports under section 5313.

*Id.*; (emphasis in original).

"Money transmitting," as used in § 5330(d)(1)(A), is defined in 18 U.S.C. § 1960(b)(2) as "transferring funds ***on behalf of the public*** by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier;" (emphasis added).  In *Mazza-Alaluf*, 607 F.Supp. 2d at 489, the Court noted that § 1960 "does not define the word 'business,' which should be afforded its ordinary meaning as an enterprise that operates for profit."  *Id., citing Travelers Insurance Co. v. Carpenter*, 411 F.3d 323, 334 (2d Cir. 2005).  Similarly, Georgia law defines "money transmission" as "engaging in the business of receiving money for transmission or transmitting money within the United States or to locations abroad by any and all means including, but not limited to, an order, wire, facsimile, or electronic transfer."  O.C.G.A. § 7-1-680(a)(5).

As previously stated, all the government alleges about Premium is that Premium was (a) a Delaware corporation that (b) had bank accounts, (c) received wires into and sent wires out of at least one of those bank accounts, and (d) was neither licensed nor registered by the State of Georgia nor registered with the federal government to operate as a money transmitting business.  From there, and

without ever laying the necessary factual foundation as to how Premium meets the definition of a "money transmitting business" in the first place, the government leaps to the legal conclusion that Premium was an *unlicensed* money transmitting business and that all of its seized funds should therefore be forfeited to the federal government.

Pursuant to *Twombly*, and due to the Government's failure to plead sufficient factual allegations which would allow the Court to conclude that Premium was a money transmitting business, the Government's complaint cannot survive a Rule 12(b)(6) motion to dismiss. It was the Government's burden to provide "more than labels and conclusions" as to why Premium was a money transmitting business, much less an unlicensed one; *Twombly,* 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. 1949. Moreover, "notice pleading requires that a complaint contain inferential allegations from which we can identify each of the *material* elements necessary to sustain a recovery under some viable legal theory." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). In this case, however, the government's complaint simply concludes that Premium was an *unlicensed* money transmitting business without ever laying the foundation as to why Premium was a money transmitting business in the first place. Thus, the Government failed to

carry its burdens and its complaint never crosses the line between conceivable and plausible; *Twombly*, 550 U.S. at 570.

This case mirrors *Twombly*. In *Twombly*, a putative class of plaintiffs filed suit pursuant to § 1 of the Sherman Act, 15 U.S.C. § 1, against a group of Incumbent Local Exchange Carriers ("ILECs") alleging that the ILECs engaged in "parallel conduct" in their respective service areas to both inflate the charges for local telephone and high-speed internet services and inhibit the growth of competitive local exchange carriers ("CLECs"). *Twombly*, 550 U.S. at 549-550. In order to allege that the ILEC's actually conspired with one another in such a way as to constitute a Sherman Act violation, the plaintiffs merely stated that "upon information and belief [the ILECs] have entered into a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets…" *Id.*, at 551.

In ruling that plaintiffs' complaint was insufficient to withstand a motion to dismiss filed pursuant to Rule 12(b)(6), the Court reasoned as follows:

> Because § 1 of the Sherman Act does not prohibit [all] unreasonable restraints of trade…but only restraints effected by a contract, combination, or conspiracy, the crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express. While a showing of parallel business behavior is admissible circumstantial evidence from which the fact finder may

> infer agreement, it falls short of conclusively establishing agreement or itself constituting a Sherman Act offense. Even conscious parallelism, a common reaction of firms in a concentrated market that recognize their shared economic interests and their interdependence with respect to price and output decisions is not in itself unlawful.

*Id.,* at 554; (internal citations omitted). Thus, because the complaint in *Twombly* merely alleged that the ILECs engaged in parallel behavior, the complaint's factual allegations were insufficient to allege a violation of the Sherman Act: "We think that nothing contained in the complaint invests either the action or inaction alleged with a plausible suggestion of conspiracy." *Id.,* at 566. Moreover, the complaint's conclusory allegations that the ILECs' parallelism in and of itself constituted a conspiracy was insufficient to render the complaint plausible. *Id.*

Similarly, in *Wilchombe*, the plaintiff (Wilchombe), who participated in the writing and production of a song, sued the owner of the song (TeeVee Tunes, or "TVT") for breaching the fiduciary duty it owed to Wilchombe after the song was released and TVT failed to pay Wilchombe for his services. *Wilchombe*, 555 F.3d at 954-955. In affirming the District Court's 12(b)(6) dismissal of Wilchombe's complaint, the Court noted that beyond Wilchombe's conclusory allegation that TVT had breached its fiduciary duty to him, "Wilchombe did not provide any factual basis in his amended complaint establishing that TVT owes him a fiduciary

duty." *Id,* at 959. The Court therefore affirmed the District Court's dismissal of Wilchombe's complaint; *see also Corbitt v. Home Depot U.S.A.*, 589 F.3d 1136 (11th Cir. 2009) ("Because the Appellants have failed to allege what the factual basis is for their invasion of privacy claim, we conclude that they have failed to state a claim upon which relief can be granted, and thus their claim should have been dismissed.")

In this case, like the plaintiffs in *Twombly* and *Wilchombe*, the government has simply made a conclusory allegation that Premium is an "*unlicensed* money transmitting business" without laying the factual foundation as to why Premium is a "money transmitting business" in the first place. Instead, the government merely alleges that Premium was a company with bank accounts which sent and received wires, but these allegations provide the Court with an insufficient factual basis to draw the reasonable inference that Premium was a money transmitting business or that it needed to become licensed by or registered with the State of Georgia or registered with the federal government.

Among other essential facts, the government never alleges (i) whether Premium was a business which operated for a profit, (ii) whether Premium had customers, (iii) whether Premium transferred funds on behalf of the public, or (iv) whether Premium was required to file reports pursuant to 31 U.S.C. § 5313. All of

these are basic facts which the government must include in its claim in order to sufficiently allege that Premium is a money transmitting business.  Instead, the Court is left with a complaint that leaps from a place where Premium had bank accounts to one where Premium was a money transmitting business, with little in-between.  This is *exactly* the type of pleading that *Twombly* and its progeny specifically deem to be insufficient.

## III.   CONCLUSION

It is well settled that in order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  It is likewise well settled that courts need not accept legal conclusions as true and that a complaint may not rest on legal conclusions alone.

In this case, the complaint's sole factual foundation is that Premium was a Delaware company that had bank accounts and that it used at least one of those accounts to send and receive wire transfers of funds.  That is simply not enough.  The Government's complaint should be dismissed because this foundation is woefully inadequate to support a reasonable conclusion that Premium was a money transmitting business, unlicensed or otherwise, or that Premium's money is thus forfeitable to the Government.

WHEREFORE, for the foregoing reasons, Claimants Mansef Inc. and Premium Services LLC respectfully request that this Court enter an order dismissing the Government's complaint for forfeiture.

Dated February 9, 2010

Respectfully submitted,

| | |
|---|---|
| */s/ Lesli N. Gaither* | */s/Kyle G.A. Wallace* |
| Lesli N. Gaither | Kyle G.A. Wallace |
| Georgia Bar No. 621501 | Georgia Bar No. 734167 |
| Peter D. Coffman, Esq. | ALSTON & BIRD LLP |
| Georgia Bar No. 173120 | 1201 West Peachtree Street |
| Dow Lohnes PLLC | Atlanta, Georgia 30309-3424 |
| Six Concourse Parkway | Telephone: (404) 881-7000 |
| Suite 1800 | Facsimile: (404) 881-7777 |
| Atlanta, Georgia 30328 | |
| Telephone: (770) 901-8800 | */s/Susan K. Ross* |
| Facsimile: (770) 901-8824 | Susan K. Ross, Esq. |
| | Mitchell Silberberg & Knupp |
| */s/ Andrew S. Ittleman* | 11377 W. Olympic Blvd. |
| Mitchell S. Fuerst, Esq. | Los Angeles, CA 9006 |
| Florida Bar No. 264598 | Telephone: (310) 312-3206 |
| Andrew S. Ittleman, Esq. | Facsimile: (310) 231-8406 |
| Florida Bar No. 802441 | *Counsel for Claimant Mansef Inc.* |
| Fuerst Humphrey Ittleman, PL | |
| 1001 Brickell Bay Drive, Suite 2002 | |
| Miami, FL  33131 | |
| Telephone: 305-350-5690 | |
| Facsimile: 305-371-8989 | |
| *Counsel for Claimant Premium Services, LLC* | |

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

I hereby certify that the foregoing was prepared in Times New Roman 14 point font, double-spaced, with a top margin of not less than 1.5 inches and a left margin of not less than 1 inch.

>   */s/ Lesli N. Gaither*
>   Lesli N. Gaither
>   Georgia Bar No. 621501
>   Dow Lohnes PLLC
>   Six Concourse Parkway
>   Suite 1800
>   Atlanta, Georgia 30328
>   Telephone: (770) 901-8800
>   Facsimile: (770) 901-8824

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>   Special Assistant U.S. Attorney Mary Kruger
>   75 Spring Street, S.W.
>   Suite 600
>   Atlanta Georgia 30303
>   Mary.kruger@usdoj.gov
>
>   Kyle G. A. Wallace
>   Alston & Bird LLP
>   1201 West Peachtree Street
>   Atlanta, Georgia 30309
>   Kyle.wallace@alston.com

*/s/ Lesli N. Gaither*
Lesli N. Gaither
Georgia Bar No. 621501
Dow Lohnes PLLC
Six Concourse Parkway
Suite 1800
Atlanta, Georgia 30328
Telephone: (770) 901-8800
Facsimile: (770) 901-8824